**LITE DePALMA GREENBERG & RIVAS, LLC**
Joseph J. DePalma
Susan D. Pontoriero
Two Gateway Center, 12th Floor
Newark, NJ 07102
Telephone: 973-623-3000
Fax: 973-623-0858

**MILBERG WEISS & BERSHAD LLP**
JEFF S. WESTERMAN
SABRINA S. KIM
One California Plaza
300 South Grand Ave., Suite 3900
Los Angeles, CA 90071
Telephone: (213) 617-1200
Facsimile: (213) 617-1975
Email: jwesterman@milbergweiss.com
skim@milbergweiss.com

*Attorneys for Plaintiffs*

**RECEIVED**

MAR 2 9 2007

AT 8:30 ___6:43___ M.
WILLIAM T. WALSH, CLERK

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| Alexander Nunez, on behalf of himself and all others similarly situated, | Civil Action No.: 07cv 1490 (NLH) |
| Plaintiff | **CLASS ACTION COMPLAINT** |
| v. | |
| MENU FOODS LIMITED; MENU FOODS INC.; MENU FOODS MIDWEST CORPORATION; MENU FOODS INCOME FUND; MENU FOODS SOUTH DAKOTA, INC.; and MENU FOODS HOLDINGS, INC., | **JURY TRIAL DEMANDED** |
| Defendants. | |

Dockets.Justia.com

## PLAINTIFF'S CLASS ACTION COMPLAINT

Plaintiff Alexander Nunez ("Plaintiff"), individually and on behalf of all others similarly situated, files this Class Action Complaint against Defendants Menu Foods, Inc., a New Jersey Corporation, Menu Foods Income Fund, a foreign trust, and its affiliated entities (collectively "Defendants"). Plaintiff alleges the following based on personal knowledge with respect to his own experiences, and otherwise based on information and belief.

## INTRODUCTION

1.    Plaintiff brings this nationwide class action pursuant to Federal Rule of Civil Procedure 23, on behalf of himself and as a representative of a class of persons consisting of all persons in the United States who purchased contaminated pet food products produced, manufactured, and/or distributed by Defendants that caused injury, sickness, and/or death to Plaintiff's household pet and those of other pet owners across the nation. The pet food products were or will be recalled by Defendants, and include products produced between December 3, 2006 and March 6, 2007. The defective pet food products referenced in this paragraph are referred to as the "Products" in this Complaint.

2.    Defendants are the nation's leading manufacturer of wet pet food products sold by retailers, pet specialty stores, and other wholesale and retail outlets including Wal-Mart, Safeway, Petco, PetSmart Inc., and Kroger, producing more than one billion containers per year. Defendants hold themselves out to the public as a manufacturer of safe, nutritious, and high-quality dog and cat food.

3.    Defendants developed, manufactured, marketed, advertised, and warranted their Products as free of defects, and safe and fit for the ordinary purpose for which they were used, *i.e.*, for household pet consumption. Defendants intended to, and did, place the Products into the stream of commerce to

be sold to Plaintiff and other pet owners in this district and throughout the United States.

4.    Since at least February 20, 2007, Defendants knew or should have known that their Products were causing illness and/or death to dogs and cats who consumed their Products. Defendants, nonetheless, delayed announcing the recall to minimize the financial fallout from the contamination. Defendants finally issued a recall nearly a month later, on March 16, 2007, but only because Defendants' biggest institutional customer had initiated its own recall of Defendants' Products at that time. The contaminating agent has since been identified as aminopterin -- a rodentcide banned in the United States.

5.    As a result of Defendants' negligent manufacture of the Products and delay in warning affected pet owners, Plaintiff and members of the Class have unnecessarily suffered damages in the form of veterinary and burial expenses, loss of pets, and the purchase price of the Products, which Plaintiff and Class members would never have purchased had they known of the Products' defects.

6.    Defendants know and have since admitted that certain of their products manufactured in their Kansas and New Jersey facilities between December 3, 2006 and March 6, 2007 are defective and have caused, and continue to cause, severe injury and illness, and sometimes death, in household pets.

## PARTIES

7.    Plaintiff is a resident of Jackson Heights, New York. Plaintiff purchased the recalled "Nutro Ultra" Product and fed it to his dog, who died as a result. Plaintiff, individually and as a representative of a Class of similarly situated persons (defined below), brings suit against the named Defendants for offering for sale and selling to Plaintiff and members of Class the Products in a defective condition and thereby causing damages to Plaintiff and members of the Class.

8.    Defendant MENU FOODS INCOME FUND (the "Income Fund") is an unincorporated open-ended trust established under the laws of the Province of Ontario with its principal place of business in Ontario, Canada. The Income Fund controls, directly or indirectly, the other Defendants engaged in the manufacture and distribution of pet food products, including the Products.

9.    Defendant MENU FOODS MIDWEST CORP. is a Delaware corporation affiliated with the other Defendants and involved in their activities relating to the Products.

10.    Defendant MENU FOODS SOUTH DAKOTA INC. is a Delaware corporation affiliated with the other Defendants and involved in their activities relating to the Products.

11.    Defendant MENU FOODS HOLDINGS, INC. is a Delaware corporation affiliated with the other Defendants and involved in their activities relating to the Products.

12.    Defendant MENU FOODS, INC. is a New Jersey corporation affiliated with the other Defendants and involved in their activities relating to the Products.

13.    Defendant MENU FOODS LIMITED ("MFL") manufactures and sells wet pet food products to retail customers and brand owners in North America. MFL owns the Kansas and New Jersey manufacturing plants that produced the Products now subject to recall. It is affiliated with the other Defendants and involved in their activities relating to the Products.

14.    Plaintiff is not aware of he true names and capacities of defendants sued as DOES 1-100, inclusive, and therefore sues them by such fictitious names. Plaintiff will amend this Complaint to add the true names and capacities of the DOE defendants once they are discovered. Each of the DOE defendants is legally responsible in some manner for the unlawful acts alleged in this Complaint.

15. Some or all DOE defendants are controlled by, control, or have a common nucleus of control with one or more specifically named defendants in such manner as to justify disregarding the separateness of those entities or individuals from one another. Some or all DOE defendants are entities or individuals, who function as the agents or co-conspirators of specifically named defendants, and other defendants (including DOE defendants), facilitating the ability of one another to perpetrate the wrongs alleged in this Complaint.

16. All defendants, including DOE defendants, are agents for each other, or otherwise directly or vicariously responsible for their actions, either by agreement or by operation of law, including, *inter alia*, the laws applicable to general partnerships, piercing of the corporate veil, actual or apparent agency, and conspiracy.

## JURISDICTION AND VENUE

17. The Court has original jurisdiction over this complaint pursuant to 28 U.S.C. §1332(d) and the Class Action Fairness Act of 2005, Publ. L. 109-2 (Feb. 18, 2005); and over supplemental state law claims pursuant to 28 U.S.C. § 1367.

18. Venue is proper in this district since Defendants transacted business in this district, and the conduct complained of occurred in this district, as well as elsewhere in New Jersey. Venue is further proper in this district under, *inter alia*, 28 U.S.C. §§1391 and/or Pub. L. 109-2.

## FACTS

19. On March 14, 2007, Plaintiff Alexander Nunez purchased the Nutro Ultra Products from a national chain pet store, PETCO, located in Howard Beach, New York. Mr. Nunez's dog, BamBam, had just received a clean bill of health from his veterinarian that day.

20.    Plaintiff fed the Product to his pet dog, never suspecting that the Products contained a toxic chemical. In fact, Nutro Ultra boasts that it "uses only the finest wholesome, natural ingredients for sustained health and wellness." Within a few days of consuming the Product, however, Mr. Nunez's pet dog began showing symptoms of renal failure. On March 25, 2007, BamBam died as a result of consuming Defendants' Product.

21.    Defendants were long aware of problems with their Products, but delayed informing the public. By at least February 20, 2007, Defendants had received complaints from concerned pet owners reporting dogs and cats dying and becoming sick as a result of consuming Defendants' Products. Defendants identified, as early as March 6, 2007, the likely source of the contamination -- wheat gluten from a new supplier.

22.    On March 16, 2007, nearly a month after receiving consumer complaints, Defendants initiated a recall of 60 million cans and pouches of "cuts and gravy" style dog and cat food manufactured at Defendants' Kansas and New Jersey facilities between December 3, 2006 and March 6, 2007.

23.    Rather than timely warning the public about the suspected, and later confirmed, dangers of the Products, Defendants delayed announcing the recall to minimize the financial fallout from the contamination. Defendants had no choice but to issue a recall on March 16, 2007, because Defendants' biggest customer (which accounts for 11% of Defendants' annual revenues) had initiated its own recall of Defendants' Products.

24.    On March 23, 2007, New York state health officials reported laboratory tests of the Products found high levels of aminopterin -- a rodentcide banned in the United States but commonly used to kill rats in other countries. Aminopterin is a deadly poison that is foreign to pet food, does not naturally occur

within it, and would not be expected by any reasonable person to be present in pet food.

25.    To date, Defendants have reported 14 confirmed deaths.  However, the unconfirmed death rate is much higher, and veterinary professionals project thousands of pet dogs and cats will die or fall ill as a result of consuming Defendants' Products.

26.    As of March 24, 2007, Defendants stated they did not know how aminopterin got into their Products.  Defendants nevertheless continue to produce pet food at the two contaminated plants -- despite the New York state health officials' findings of rat poison, despite Defendants' own product testing last month that resulted in as many as one in six animal deaths, and despite the many dogs and cats who have fallen sick or died.

27.    Defendants knew about serious problems from consumer complaints no later than February 20, 2007, and they began an internal investigation by February 27, 2007.  By March 6, 2007, Defendants were able to determine a particular new supplier of wheat gluten as the likely source of the poison, and tried to correct the problem before announcing a recall in order to limit the temporal scope of the recall.  Even after March 6, Defendants continued to maintain their silence, as they -- according to their own later announcement -- conducted a "substantial battery of technical tests, conducted by both internal and external specialists."

28.    Defendants did not announce a recall or inform the public about the tainted Products until March 16, 2007.  By then, Defendants' largest institutional customer, which accounted for approximately 11% of Defendants' annual revenues, had initiated its *own* recall of Defendants' products, and placed all future orders of "cuts and gravy" products on "hold."

29.    Defendants' delay in disclosing vital information concerning the Products is in direct contrast to their own published Code of Ethical Conduct ("Code"), which touts that they are "committed to full and honest communications with [their] customers about [their] products and services." Defendants further acknowledge in their Code that, as a pet food company, their customers have "trust in us" and that "their trust in us must be justified" (e.g., by avoiding "promises that Menu [Foods] cannot keep").

30.    Defendants, directly or through actual or ostensible agents and/or co-conspirators, have implicitly and explicitly represented that the Products are fit for consumption by pets and will not result in the death and serious illness of pets who consume the Products.

31.    Defendants have also made representations, including on product labeling and in marketing and promotional materials, concerning the quality of their Products, including explicit and implicit representations that the Products are suitable for consumption by pets. Defendants ultimately make billions of dollars a year from companies who sell Menu Foods at the retail level. Accordingly, they keep themselves apprised of the advertising, promotions, marketing and claims that are made on behalf of Menu Foods' products. Defendants no doubt coordinate with the companies who brand their products at the retail level about the products' safety and quality, including the Products.

## CLASS ACTION ALLEGATIONS

32.    Plaintiff brings this action on his own behalf and as a Class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure on behalf of the following proposed Class:

> All persons in the United States who purchased, or incurred damages by using, pet food produced or manufactured by Defendants that was

or will be recalled by Defendants, including that produced from December 3, 2006 up to and including March 6, 2007.

Upon completion of discovery with respect to the scope of the Class, Plaintiff reserves the right to amend the class definition. Excluded from the Class are Defendants, their parents, subsidiaries and affiliates, directors and officers, and members of their immediate families. Also excluded from the Class are the court, the Court's spouse, all person within the third degree of relationship to the Court and its spouse, and the spouses of all such persons.

33.    The Class is composed of thousands of persons throughout the country, and is sufficiently numerous for class treatment. The joinder of all Class members individually in one action would be impracticable, and the disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

34.    Plaintiff's claims are typical of the claims of the Class, and Plaintiff has no interests adverse to the interests of other members of the Class.

35.    There are questions of law and fact common to all Class members that predominate over questions affecting any individual members, including the following:

(a)    Whether Defendants violated the New Jersey Consumer Fraud Act;

(b)    Whether Defendants' representations, omissions, and conduct regarding the Products were misleading or false;

(c)    Whether Defendants' representations and conduct were likely to deceive consumers into believing that the Products were safe for the purpose for which they were sold;

(d)    When Defendants knew or should have known the Products were poisoning animals;

(e)    Whether Defendants refused to disclose the problems with the Products after it knew of their propensity to harm pets;

(f)    Whether the propensity of the Products to harm pets constitutes a manufacturing or design defect;

(g)    Whether Defendants' conduct constitutes a breach of warranties;

(h)    Whether Defendants' conduct constitutes a breach of contract;

(i)    Whether Class members have been injured by Defendants' conduct;

(j)    Whether Class members have sustained damages and are entitled to restitution as a result of Defendants' wrongdoing, and if so, what is the proper measure and appropriate formula to be applied in determining such damages and restitution, including the availability of emotional distress and medical monitoring damages; and

(k)    Whether Class members are entitled to injunctive relief.

36.    Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel experienced and competent in the prosecution of class action litigation.

37.    A class action is superior to other methods for the fair and efficient adjudication of the claims herein asserted.  Plaintiffs anticipate that no unusual difficulties are likely to be encountered in the management of this class action.

38.    A class action will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would engender.  Class treatment also will permit the adjudication of relatively small claims by many Class members who could not otherwise afford to seek legal redress for the wrongs complained of herein.  If a class or general public action is

not permitted, many Class members will likely receive no remedy for damages suffered as a result of Menu Foods' misconduct.

39.    Defendants have acted and refused to act on grounds generally applicable to the entire Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

## COUNT I
## STRICT PRODUCTS LIABILITY

40.    Plaintiff hereby incorporates all other allegations in the Complaint into this Cause of Action, except such allegations as may be inconsistent herewith (which are plead in the alternative).  Plaintiff alleges this cause of action on behalf of himself and all others similarly situated.

41.    Defendants are strictly liable for supplying a product that is either defective in its manufacture by virtue of the introduction of aminopterin into the Product while under Defendants' control or, alternatively, defective in its design, by virtue of the lack of safeguards necessary to ensure that aminopterin or similar toxins are not introduced into its pet food while under Defendants' control.

42.    Defendants are also strictly liable for failure to warn the public of the known dangers and reasonably foreseeable harm that could result from use of the Product.

43.    Plaintiff, as a pet owner, is a reasonably foreseeable user of the Product, and purchased and used the product in a foreseeable manner, that is, Plaintiff fed pets with the Product.  Plaintiff has been damaged, and has suffered losses including the loss of a pet, the expenditure of money for medical care and monitoring of pets, severe emotional distress, and the money spent on the Product itself.

## COUNT II
## NEGLIGENCE

44.   Plaintiff incorporates all other allegations in the Complaint into this cause of action, except such allegations as may be inconsistent herewith (which are plead in the alternative). Plaintiff alleges this cause of action on behalf of himself and all others similarly situated.

45.   Defendants owed a duty to Plaintiff to ensure that its pet foods were not poisonous to pets in the manner of the Products.

46.   Defendants breached their duty of care to Plaintiff by failing to use sufficient quality control, perform adequate testing, proper manufacturing, production, or processing, and failing to take sufficient measure to prevent the Products from being offered for sale, sold, or fed to pets.

47.   *Res ipsa loquitur* applies because Defendants had exclusive control of the relevant instrumentalities, including the Product and manufacturing facilities, and rat poison would not normally be present, absent negligence.

48.   Menu Foods' breaches of duty were the actual and proximate cause of damage to Plaintiff, including the loss of a pet, the expenditure of money for medical care and monitoring of pets, severe emotional distress, and the money spent on the Product itself.

## COUNT III
## BREACH OF WARRANTY

49.   Plaintiff incorporates all other allegations in the Complaint into this cause of action, except such allegations as may be inconsistent herewith (which are plead in the alternative). Plaintiff alleges this cause of action on behalf of himself and all others similarly situated.

50.   Defendants, by calling its product "food" and making other similarly enticing representations as set forth more fully, above, impliedly and / or expressly

warranted that the Products were ingestible and would not sicken and kill the dogs and cats that ate them. Menu Foods also warranted thereby, that its products were fit for the particular purpose of nourishing pets without sickening and killing said pets.

51.    Defendants breached these warranties by virtue of the facts set forth in the body of the Complaint, and Plaintiff was damaged thereby, including the loss of a pet, the expenditure of money for medical care and monitoring of pets, severe emotional distress, and the money spent on the Product itself.

## COUNT IV
## BREACH OF CONTRACT

52.    Plaintiff incorporates all other allegations in the Complaint into this Cause of Action, except such allegations as may be inconsistent herewith (which are plead in the alternative).   Plaintiff alleges this cause of action on behalf of himself and all others similarly situated.

53.    The facts as set forth above also constitute the formation and breach of a contract between Plaintiff and Defendants.   Alternatively, Plaintiff was necessarily the third party beneficiary of a contract between Defendants and intermediaries from whom Plaintiff purchased the Products. Plaintiff was damaged by Defendants' breaches, as previously set forth.

## COUNT V
## VIOLATIONS OF CONSUMER FRAUD ACT (N.J.S.A. §56:8 *et seq*)

54.    Plaintiff incorporates all other allegations in the Complaint into this cause of action, except such allegations as may be inconsistent herewith (which are plead in the alternative).  Plaintiff alleges this cause of action on behalf of himself and all others similarly situated.

55.    The acts as set forth above also constitute violations of the New Jersey Consumer Fraud Act, and Plaintiff has suffered damage thereby, including out of pocket loss and other pecuniary harm, as set forth above.

**COUNT VI**
**UNJUST ENRICHMENT**

56.    Plaintiff incorporates all other allegations in the Complaint into this cause of action, except such allegations as may be inconsistent herewith (which are plead in the alternative).  Plaintiff alleges this cause of action on behalf of himself and all others similarly situated.

57.    As a direct, proximate, and foreseeable result of Defendants' acts and otherwise wrongful conduct, Plaintiff suffered damages.  Defendants profited and benefited from the sale of the Products, even as the Products caused Plaintiff to incur damages.

58.    Defendants have accepted and retained these profits and benefits derived from consumers, including Plaintiff, with full knowledge and awareness that, as a result of Defendants' unconscionable wrongdoing, consumers were not receiving products of the quality, nature, fitness, or value that had been represented by Defendants or that reasonable consumers expected.  Plaintiff purchased pet food that he expected would be safe and healthy for his dog and instead has had to endure the death of his pet.

59.    By virtue of the conscious wrongdoing alleged here, Defendants have been unjustly enriched at the expense of the Plaintiff.  Plaintiff is entitled to, and seeks, the disgorgement and restitution of Defendants' wrongful profits, revenues, and benefits, to the extent and in the amount deemed appropriate by the Court. Plaintiff is also entitled to, and seeks such other relief as the Court deems just and proper to remedy Defendants' unjust enrichment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Class, prays for the following relief:

A.    An order certifying the Class as defined above;

B.    An award of actual damages, restitution, and/or disgorgement from Defendants of the benefits conferred by Plaintiff and the Class;

C.    Reimbursement of medical and other expenses;

D.    Appropriate injunctive relief;

E.    Pre- and post-judgment interest to the Class;

F.    Reasonable attorneys' fees and costs; and

G.    Such further and other relief the Court deems appropriate.

## JURY DEMAND

Plaintiff requests trial by jury of all claims that can be so tried.

LITE DePALMA GREENBERG &
RIVAS LLC


Joseph J. DePalma
Susan D. Pontoricro
Two Gateway Center, 12th Floor
Newark, NJ 07102
Tel: 973.623.3000
Fax: 973.623.0858

DATED: March 29, 2007

**MILBERG WEISS & BERSHAD LLP**
Jeff S. Westerman
Sabrina S. Kim
One California Plaza
300 South Grand Ave., Suite 3900
Los Angeles, CA 90071
Telephone: (213) 617-1200
Facsimile: (213) 617-1975
Email: jwesterman@milbergweiss.com
skim@milbergweiss.com

*Attorneys for Plaintiff*

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

Plaintiff, by his attorneys, hereby certifies that to the best of his knowledge, the matter in controversy is related to <u>Workman, et al. v. Menu Foods, Inc., et al</u>, Civil Action No. 07-1338(NLH-AMD) and <u>Julie Hidalgo v. Menu Foods, Inc., et al</u>., to be filed simultaneously herewith. Plaintiff is not currently aware of any other party who should be joined in this action.

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are wilfully false, I am subject to punishment.

Dated:   March 29, 2007                  **LITE DePALMA GREENBERG &**
                                         **RIVAS, LLC**

                             By:   _Joseph J. DePalma/s/_
                                   Joseph J. DePalma
                                   Susan D. Pontoriero
                                   Two Gateway Center, 12th Floor
                                   Newark, New Jersey 07102
                                   Tel: (973) 623-3000
                                   Fax: (973) 623-0858

                                   *Attorneys for Plaintiffs*

**LITE DEPALMA GREENBERG & RIVAS, LLC**
Joseph J. DePalma
Susan D. Pontoriero
Two Gateway Center, 12th Floor
Newark, New Jersey 07102
Tel: (973) 623-3000

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ALEXANDER NUNEZ, on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> MENU FOODS LIMITED; MENU FOODS INC.; MENU FOODS MIDWEST CORPORATION; MENU FOODS INCOME FUND; MENU FOODS SOUTH DAKOTA, INC.; and MENU FOODS HOLDINGS, INC., <br><br> Defendants | Civil Action No. 07CV1490(NLH) |

## CERTIFICATE OF NON-ARBITRABILITY

Joseph J. DePalma, of full age, certifies that pursuant to L. Civ. R. 201.1 the within matter

is not arbitrable, being that the Complaint seeks damages that are in an excess of $150,000.

Joseph J. DePalma/SP
_____
Joseph J. DePalma

Dated:  March 29, 2007